IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------x

MILTON PFEIFFER,                                    Civil Action No.

          Plaintiff,

                                       **VERIFIED COMPLAINT**

      v.

LAURENT ALPERT, BRIAN C. BEAZER,                    JURY TRIAL DEMANDED
MICHAEL H. FURLOW, KENNETH F.
KHOURY, PETER G. LEEMPUTTE,
IAN J. MCCARTHY, ALLAN P. MERRILL,
NORMA A. PROVENCIO, LARRY T.
SOLARI, STEPHEN P. ZELNACK, Jr., and
BEAZER HOMES USA, INC.,

          Defendants.

-------------------------------------------------------------------x

       Plaintiff Milton Pfeiffer ("Plaintiff") alleges, upon information and belief based upon,

*inter alia*, the investigation made by and through his attorneys, except as to those allegations that

pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

       1.     Plaintiff brings this action derivatively and on behalf of the stockholders of

Beazer Homes USA, Inc. ("Beazer Homes" or the "Company") and on behalf of Beazer Homes's

stockholders against Beazer Homes, the Company's board of directors ("Board"), and its

executive officers to challenge the approval of Beazer Homes USA, Inc. 2010 Equity Incentive

Plan (the "Plan") and the terms of that Plan.  As set forth below, the Plan is defective and, thus,

non-tax-deductible pursuant to the tax code, needlessly depriving the Company of millions of

dollars in tax benefits.

2.      The 2010 Proxy Statement that the defendants distributed to solicit the approval
of the Plan was false and misleading and omitted information specifically required by the
Securities Exchange Act of 1934 (the "Exchange Act") and United States Securities and
Exchange Commission (the "SEC"), Rule 14a-9, Schedule 14A, and Regulation S-K,
promulgated thereunder. The Defendants made false and misleading statements in the Proxy
Statement by representing to the Company's stockholders that incentives under the Plan will be
tax-deductible if the stockholders approve it. This representation is false as the Plan is not tax-
deductible because it does not comply with 26 U.S.C. § 162(m) ("IRC § 162(m)") and its
relevant regulations. The Plan is also not tax-deductible because the Proxy Statement omits
information specifically required by SEC regulations, which are applicable to stockholder
approval of IRC § 162(m) plans.

3.      By distributing a false and misleading Proxy Statement, the defendants caused the
stockholders to approve a non-tax-deductible incentive plan. The false and misleading Proxy
Statement also tainted the stockholder vote for the directors, who were all up for re-election.

4.      The defendants also breached their fiduciary duties not to commit waste, by not
having a compensation plan that complies with the applicable laws and regulations. There is no
reason not to have a tax-deductible Plan that will maximize tax benefits for the Company. The
Board has a duty to construct a Plan that will obtain maximum possible tax deductions for
Beazer Homes.

5.      Plaintiff seeks, for relief, corrected disclosures and a new stockholder vote on the
approval of the Plan. As a stockholder, Plaintiff has a cause of action to seek relief when a false
and misleading proxy statement interferes with fair corporate suffrage.

2

## JURISDICTION AND PARTIES

6.      The jurisdiction of this Court is founded upon: (a) federal question jurisdiction,

pursuant to § 27 of the Exchange Act, as amended, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331; (b)

diversity of citizenship, 28 U.S.C. § 1332 except for defendant Laurent Alpert, and (c)

supplemental jurisdiction, 28 U.S.C. § 1367(a).  The Plaintiff is a citizen of the State of New

York.  The defendants, except for defendant Laurent Alpert are all citizens of jurisdictions other

than New York.  The matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs.

7.      The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a),

and Rule 14a-9, 17 C.F.R. § 240.14a-9, of the SEC promulgated thereunder, SEC Schedule 14A,

17 C.F.R. § 240.14a-101, SEC Reg. S-K (Item 402), 17 C.F.R. § 229.402, and the laws of

Delaware.  In addition, IRC § 162(m) and the Treasury Regulation, 26 C.F.R. § 1.162-27, are

applicable.

8.      Plaintiff brings this action directly and derivatively to recover specific equitable

relief for the false and misleading 2010 Proxy Statement, filed by Beazer Homes with the SEC

on February 25, 2010 (the "Proxy Statement") that failed to comply with the Exchange Act, SEC

Regulations, Treasury Regulations, and Delaware law governing the contents of proxy

statements and for the breaches of fiduciary duty under Delaware law committed by defendants

Laurent Alpert, Brian C. Beazer, Michael H. Furlow, Kenneth F. Khoury, Peter G. Leemputte,

Ian J. McCarthy, Allan P. Merrill, Norma A. Provencio, Larry T. Solari, and Stephen P. Zelnack,

Jr. (the "Individual Defendants," which includes Named Executive Officers and Director

Defendants, as defined below).

9.     The Proxy Statement solicited stockholder approval of the Plan at the annual

meeting of the stockholders of the Company held on April 13, 2010 and misrepresented the tax-

deductibility of the Plan.  The stockholders approved the Plan at the annual meeting.

10.     The Board of Directors proposed and solicited approval of the Plan that failed to

obtain the maximum tax benefits to the detriment of the Company.

11.     Plaintiff is a stockholder of the Company and was a stockholder at the time of the

wrongs alleged herein, and has been such continuously since then.

12.     Beazer Homes is a corporation organized under the laws of the State of Delaware.

The Company's last fiscal year ended September 30, 2010.  On November 3, 2010, it had

75,669,381 shares of stock issued and outstanding.  The Company's stock is traded on the New

York Stock Exchange under the ticker symbol BZH.  Beazer Homes builds and sells primarily

single-family homes in the United States.  It also offers home mortgage services through its

subsidiary, Beazer Mortgage Corporation.  In the past few years, the Company went through

legal troubles with the Securities & Exchange Commission and the U.S. government for

accounting fraud and mortgage fraud.  There were also: an Employee Retirement Income

Security Act of 1974 ("ERISA") class action, a securities fraud class action, a homeowners' class

action, and a derivative action (the "2007 Derivative Action").  The Company settled all actions

but the homeowners' class action in 2009 and 2010.  The complaint in the 2007 Derivative

Action, which was litigated and settled in 2009 in the Northern District of Georgia, raised issues

entirely different from the claims alleged herein.

13.     Defendant Brian C. Beazer ("Beazer") is the Company's Non-Executive

Chairman of the Company's Board.

4

14.    Defendants Laurent Alpert ("Alpert"), Peter G. Leemputte ("Leemputte"), Ian J. McCarthy ("McCarthy"), Norma A. Provencio ("Provencio"), Larry T. Solari ("Solari"), and Stephen P. Zelnack ("Zelnack") along with Defendant Beazer, are all members of the Company's Board ("Director Defendants").

15.    Defendants Michael H. Furlow ("Furlow"), Kenneth F. Khoury ("Khoury"), Ian J. McCarthy ("McCarthy") and Allan P. Merrill ("Merrill") are the Named Executive Officers as defined in 17 C.F.R. § 229.402(a)(3), Covered Employees as defined in IRC § 162(m)(c)(ii)(2), and Officers as defined in 10 Del. C. § 3114(b) ("Named Executive Officers" and together with the Director Defendants, the "Individual Defendants").

16.    Defendant McCarthy is the Company's President and Chief Executive Officer ("CEO").

17.    Defendant Furlow is the Company's Division President.  He was, up until August 6, 2009, the Company's Executive Vice President and Chief Operating Officer ("COO").

18.    Defendant Khoury is the Company's Executive Vice President and General Counsel.

19.    Defendant Merrill is the Company's Executive Vice President and Chief Financial Officer ("CFO").

20.    All the Individual Defendants received and will receive payments from the Plan.

21.    This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.  This action does not allege securities fraud or any other fraud.  It does not seek to recover damages, but rather specific, equitable relief.  This is an action based on the false and misleading Proxy Statement and on the Individual Defendants' breaches of fiduciary duty.

## WRONGFUL ACTS AND OMISSIONS UNDER
## § 14(a) OF THE EXCHANGE ACT

22.     In connection with the acts, omissions, conduct, and wrongs alleged herein,
defendants used the mails and the means or instrumentalities of interstate commerce in
committing the wrongs alleged herein.

23.     IRC § 162(m) imposes a $ 1 million limit on the amount a public company may
deduct for compensation paid to the Covered Employees.  The same provision allows for an
exception to this limit for compensation that qualifies as "performance-based" as defined by the
Code and the regulations promulgated thereunder.  Whereas IRC § 162(a)(1) allows the
Company as an income tax deduction "a reasonable allowance for salaries or other compensation
for personal services actually rendered" by its employees, IRC  § 162(m) imposes restrictions on
that deduction for the compensation of the Company's Covered Employees.  The Covered
Employees, as defined in IRC  § 162(m)(3) are the CEO and those officers whose total
individual compensation is, under the Exchange Act, required to be reported to the stockholders
each year.  For compensation in excess of $1 million, in order for that compensation to qualify
for the exception to the restrictions under § 162(m), the Plan has to comply with the
requirements of IRC § 162(m) and 26 C.F.R. § 1.162-27 ("Treas. Reg. § 1.162-27").

24.     Congress enacted IRC § 162(m) not as a revenue device, but as part of its effort to
regulate corporate affairs in favor of stockholders and other investors.  In particular, it is
designed to be a counterweight to the policies of many states to regulate corporations that
operates in favor of officers, directors, and other insiders.  Here, Congress employed the tax code
as an instrument of corporate governance.  As the Joint Committee on Taxation stated: "The $1
million deduction limitation reflects corporate governance issues regarding excessive
compensation, rather than issues of tax policy."  Joint Committee on Taxation, Report of

6

Investigation of Enron Corporation and Related Entities Regarding Federal Tax and

Compensation Issues and Policy Recommendations, 2003 WL 25599037 n.2211 and

accompanying text (2003).  As a part of the Tax Code, IRC § 162(m) is construed like other Tax

Code provisions.

      25.     IRC § 162(m) provides that compensation paid to a public company's chief

executive officer or to its four most highly compensated other officers will be deductible, but

only up to $1 million, unless the compensation is paid solely for attaining one or more objective

performance goals. To qualify for the deduction, the performance goals must: (i) be determined

by a two-or-more member compensation committee of the board of directors; (ii) along with the

applicable corporate officers' compensation package, be disclosed to, and approved by, a

shareholder majority vote; and (iii) be confirmed by the compensation committee as being met

before any compensation is paid.  Treas. Reg. § 1.162-27(e)(v)(2).

      26.     Further, performance goals must be objective.  Under the tax regulations,

performance goals are objective only if a "third party having knowledge of the relevant facts

could determine whether the goal is met." Treas. Reg. § 1.162-27(e)(2).  As alleged herein, the

performance goals were not objective but, rather, "subjective" goals, in violation of applicable

tax regulations.  Beazer Home's Plan and its interpretation of the Plan do not meet the exacting

standards of the IRC and the regulations.  Thus, the Company cannot properly deduct the

payments paid pursuant to the Plan.

      27.     The Individual Defendants who were members of the Company's Board on or

around February 25, 2010, authorized the distribution of the Proxy Statement by means of which

they solicited the proxies of the Company's stockholders for, *inter alia*, the re-election of all

directors to serve until the next annual meeting of stockholders or until their successors are

elected and qualified. The other items sought by solicitation of proxies include the approval of the Plan, and the ratification of the appointment by the Deloitte & Touche, LLP as independent auditors to audit the accounts of the Company for the fiscal year ending September 30, 2010.

28.     All the defendants permitted the use of their names in the Proxy Statement to solicit proxies.

29.     The Plan permits the grant of the following types of stock-based awards: (i) stock options (both incentive stock options ("ISOs") and non-qualified stock options ("NQSOs")), (ii) stock appreciation rights (SARs"), (iii) restricted stock, restricted stock units ("RSUs"), (iv) incentive awards, (v) other stock-based awards, and (vi) dividend equivalents.

30.     The Proxy Statement represents that the affirmative vote of the holders of a majority of the outstanding shares of common stock of the Company is required for approval of the Plan. The Proxy Statement also alerts the stockholders that a copy of the Plan is attached and encourages the stockholders to read the full text of the Plan, annexed to the Proxy Statement. According to the Proxy Statement and the Plan, the Plan became effective on February 4, 2010, the date of adoption by the Board and terminates on February 3, 2020.

31.     The Proxy Statement claims that "[t]he Plan has been designed to enable our Compensation Committee to structure awards that meet the requirements for qualified performance-based compensation that would not be subject to the $1,000,000 per year deduction limit." Proxy Statement at 24. However, the Board explicitly states that, if the stockholders do not approve the Plan, the Board will instead have to pay more cash incentives or other non-equity based awards, increasing the Company's expenses as such compensation would not qualify the Company for tax-deduction. This statement was intended to coerce the stockholder to vote for the Plan. The stockholders were faced with two options: vote for the Plan, which will

8

qualify the Company for a tax-deduction for the performance-based awards, or vote against the Plan, which will authorize the Company to pay comparable compensation and lose the deduction.

32.     However, the aforesaid representation in the Proxy Statement, that the Plan was designed to allow for tax-deductions, was materially false and misleading, for, even if the stockholder did vote for the Plan, the Company would not get the deduction.  The defendants threatened to pay the incentive payments even if the Company's stockholders disapproved it. Accordingly, no vote of the stockholders would make it deductible, pursuant to Treas. Reg. § 1.16-27(e)(4)(i).

33.     Because the Proxy Statement proposed the approval of the Plan, SEC Schedule 14A, 17 C.F.R. § 240.14a-101 (Item 8(b)) requires the Proxy Statement to disclose the information required by 17 C.F.R. § 229.402(b)(2)(xii), which is the "impact of the accounting and tax treatments of the particular form of compensation" for the Named Executive Officers. The aforesaid representation stating that any part of the Plan is tax-deductible for the Named Executive Officers is materially false.

34.     A performance goal needs to be objective, which, pursuant to the Treasury Regulations is "if a third party having knowledge of the relevant facts could determine whether the goal is met."  Treas. Reg. § 1.162-27(e)(2)(i).  The Plan lists 36 possible performance conditions, but no objective formula or standard for computing the amount of compensation payable to the employee.  The shareholder is then, left without any means to ascertain the maximum amount of compensation that could be paid to any employee, in violation of Treas. Reg. § 1.162-27(e)(4)(i).  Alternatively, the Plan does not disclose, for shareholder approval, the

formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained. *Id.*; Treas. Reg. § 1.162-27(e)(4)(iv).

35.     The Proxy Statement was materially false and misleading in that it omitted to disclose, with the requisite meaningful specificity, the material terms and provisions under which the incentive compensation is to be paid. The House Conference Report, reciting the intent of Congress in passing IRC § 162(m)(4)(C)(ii), states:

> In developing standards as to whether disclosure of the terms of a plan or agreement is adequate, the Secretary [of the Treasury] should take into account the SEC rules regarding disclosure. To the extent consistent with those rules, however, disclosure should be as *specific* as possible.

H.R. Conf. Rep. 103-213 at *588, 1993 WL 302291 (Aug. 4, 1993). The Treasury Regulations expressly refer to the applicability of the SEC regulations. *See* Treas. Reg. § 1.162-27(e)(4)(v).

36.     The terms of the Plan are nowhere near specific. Under the Plan the Compensation Committee (the "Committee") is responsible for administering the Plan within its sole discretion. Many of the business goals, *i.e.*, "objective measures of personal targets, goals or completion of projects," "objective measure of customer satisfaction," are not defined in the Proxy Statement, in the Plan, or in the Company's Form 10-K. These terms are essentially meaningless for a regular shareholder who is trying to determine the possible compensation a participant may receive, even if they are quantifiable by Company. The Committee cannot just insert the word "objective" before a subjective and vague performance goal to turn it into an objective one.

37.     Given the defects in the Plan, the Proxy Statement is false to represent that any part of the Plan complies with IRC § 162(m) and that the compensation paid to the Covered

Employees are tax-deductible. This misrepresentation violates § 14(a) of the Exchange Act and Rule 14a-9.

38.     The Proxy Statement further violates § 14(a) and Rule 14a-9 by omitting the New Plan Benefits table, as required by Schedule 14A, 17 C.F.R. § 240.14A-101 (Item 10), a rule promulgated under § 14(a). Item 10(a) states that if stockholder action is taken in regards to a compensation plan, *i.e.*, a stockholder vote, then the proxy statement must contain a New Plan Benefits table, disclosing "the benefits or amounts that will be received by or allocated to [persons specified in Item 402 of Regulation S-K § 229.402(a)(3)] under the plan being acted upon, if such benefits or amounts are determinable." Schedule 14A (Item 10)(2)(i).

39.     The only way to escape the requirement of not including a New Plan Benefits table is if the benefits or amounts are not determinable. But such compensation cannot be tax-deductible under § 162(m), which mandates that awards must be determined on the basis of objectively determinable criteria. Therefore, the Proxy Statement is either false to state that the Compensation Committee took IRC § 162(m) into account, or it falsely omitted the New Plan Benefits table under Schedule 14A.

40.     To the extent that the Treasury Regulations are supplemented by the SEC Regulations, Treas. Reg. § 1.162-27(e)(4)(v), the SEC requires that a proxy statement must either disclose targets or discuss how difficult it will be for the company to achieve the undisclosed target levels. 17 C.F.R. § 229.402 (Instruction 4). Moreover, the proxy statement must also disclose how non-GAAP target levels are calculated from the audited financial statements. 17 C.F.R. § 229.402 (Instruction 5). These omissions are unlawful under 15 U.S.C. § 78n(a).

41.     The question of whether an expense is deductible depends on a correct application of the law, not upon the failure of the IRS to enforce that law. As one court explained:

> That, as is claimed by the defendants, the Internal Revenue Service did not charge [the defendant] with personal tax liability … is not binding on the court in an action such as this. The standards of fiduciary responsibility are not to be measured by those of tax accounting. The tax collector may have felt that he had inadequate evidence or manpower, or perhaps for other reasons he did not have the inclination to proceed against the taxpayer. That determination is not equivalent to exoneration of the fiduciary or to satisfaction of his obligations to those, including minority stockholders, for whom he is a trustee.

*Sorin v. Shahmoon Indus., Inc.*, 30 Misc.2d 408, 220 N.Y.S.2d 760, 779 (N.Y. Sup. Ct. 1961).

42.     All the defendants negligently made misrepresentations concerning the deductibility of the incentive payments under the Plan.

43.     All the defendants negligently omitted the terms and provisions of the performance goals which were required to be disclosed in order to qualify for the tax deductions under IRC § 162(m).

44.     Defendants' acts and omissions have caused injury to the Company and its stockholders, who were deprived of all material facts necessary to make a fully informed vote on whether to approve the Plan.

## STATE LAW ALLEGATIONS

45.     Under Delaware law, as members of the board of directors of the Company, the Individual Defendants owe a fiduciary duty of loyalty, including good faith and fair and full disclosure. The Director Defendants breached those duties by paying non-tax-deductible compensation. The Officer Defendants breached their duties by receiving non-tax-deductible payments and breached their duties of loyalty to the Company.

46.     The possible compensation payable pursuant to the Plan not only constitutes waste, but shocks the conscience. Over a billion dollars of performance-based awards could be

awarded over the lifetime of the Plan, but because the Plan is invalid and defective, such awards could also subject the Company to hundreds of millions of dollars in tax liability.

47.     The Board's payment of compensation that is not properly tax-deductible constitutes waste.  As Learned Hand, Felix Frankfurter, and others have famously stated, there is no patriotic duty to arrange your business so as to increase your taxes, because taxes are enforced extractions, not voluntary contributions.  And the prospect of higher taxes is one way that the Government uses to discourage antisocial conduct.  For example, the Emergency Economic Stabilization Act, Pub. Law 110-185, seeks to control corporate executive compensation at companies receiving federal assistance by providing that annual payments in excess of $500,000 are not tax-deductible.

48.     The aforesaid breach of duties of loyalties and good faith and the misrepresentations to and omissions from the Proxy Statement have caused, and are continuing to cause, injury to the Company and its stockholders.

## DEMAND ALLEGATIONS

49.     Substantive requirements of demand are governed by the law of Beazer Home's state of incorporation – Delaware.

50.     Plaintiff has not made any demand on the Company's board of directors to institute this action because doing so would be a futile and useless act.

51.     The entire Board is interested in the transactions and events alleged herein.  Of the nine members of the Board, all of them are eligible to participate in the Plan and thus interested.  Their interest lies in the fact that each director is entitled to receive a personal financial benefit that is not equally shared by the stockholders, and adopting the Plan constituted a self-dealing transaction.

13

52.     Demand is also excused because the acts alleged herein are not acts of sound business judgment. The demand requirement and its exceptions are to encourage intra-corporate resolution of disputes and to obtain the business judgment of the board on whether the litigation is in the best interest of the corporation and its shareholders. However, where, as here, a stockholder sues the board of directors over an act that is not a decision concerning the management of the business and affairs of the corporation, but one of disclosure, the business judgment rule does not apply. Delaware law excuses demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent. The Board's conduct concerning the misrepresentations in, and the omissions from, a proxy statement are not matters of business judgment, and they are not protected by the business judgment rule for the following reasons:

a.     When, for the stockholders' annual meeting, a corporate board solicits stockholders' votes for directors and for the approval of the actions of the board and its committees, the board owes the stockholders a statutory and fiduciary duty of full and fair disclosure, meaning that all material facts must be fully and fairly disclosed and no material facts may be omitted. This duty of disclosure is a thing apart from the duty and authority to deal with the business and property of the corporation. Courts give deference to a corporate board of directors as to questions of management of the corporation's business only, but not as to questions of the board's performance of its disclosure duties, for three reasons: *First*, a board's decision, even in good faith, to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the subject; *Second*, although courts may not be well suited to making business decisions, courts are well-suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures; *Third*, allegations that a proxy

14

statement has materially false and misleading representations and omissions raises issues as to the honesty, loyalty, and good faith of the directors.

           b.     As with Delaware law, under federal policy, there is no need for prior demand on the board of directors with respect to the claim of misrepresentations and omissions in a proxy statement.

           c.     At bar, the Proxy Statement contains materially false and misleading statements and omissions concerning the tax deductibility of payments under the Plan and the standards and variables for determining compensation under the Plan.

53.     The Director Defendants had the tools at hand, *i.e.*, complying with § 162(m) and the Treasury Regulations promulgated thereunder, to obtain a tax deduction on the qualified compensation. Instead, they produced a defective compensation plan that was supposed to be designed to receive such tax-deductions. Payments of such non-tax-deductible compensation constitute waste. Waste is not protected by the business judgment rule, and as such, demand is excused.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of § 14(a) of the Exchange Act and SEC Regulations
### (Direct Claim Against All Defendants)

54.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate them herein by reference.

55.     The Defendants caused materially false statements to be disseminated to the stockholders in the Proxy Statement.

56.     The acts of the Defendants have injured the Plaintiff directly by providing materially false information that the SEC specifically requires in proxy statements.

57.     As a result of these actions of the Defendants, the Plaintiff has been and will be damaged by the denial of a fully informed vote.

58.     Plaintiff has no adequate remedy at law.  To ameliorate this injury, injunctive relief is required in the form of corrective disclosures and another vote on the Plan.  The court should require the Defendants to distribute to its stockholders corrected disclosures for 2010 and hold a new vote pursuant to the corrected disclosures.

## COURT II
### Violations of § 14(a) of the Exchange Act, SEC Regulations and IRC § 162(m) and its Accompanying Regulations
### (Derivative Claim on Behalf of the Company Against All Individual Defendants)

59.     Plaintiff realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

60.     The acts of the Individual Defendants in distributing the materially false and misleading Proxy Statement have injured the Company by interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors and for compensation plans.

61.     As a result of these actions by the Individual Defendants, the Company has been and will be damaged.

62.     Plaintiff has no adequate remedy at law.  The Court should require the Defendants to distribute to its stockholders corrected disclosures for 2010 and hold a new vote.

## COUNT III
### Breach of Fiduciary Duty
### (Derivative Claim On Behalf of the Company Against the Individual Defendants)

63.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate them herein by reference.

64.     The conduct of the Director Defendants in seeking stockholder approval of the

Plan without adhering to SEC regulations and IRC § 162(m) and its accompanying regulations,

causing the compensation to be non-tax-deductible, is irrational and constitutes waste, and it has

caused and will cause injury to the Company.  An injunction requiring such approval upon full

and fair disclosure and corrective measures to comply with the applicable laws, and equitable

accounting, are required to redress those injuries.

65.     The acts of the Officer Defendants in accepting non-tax-deductible compensation

under the Plan, in including their names in the Proxy Statement, seeking stockholder approval of

the defective Plan, with false statements and omissions, have been or will be a breach of their

duty of loyalty to the Company in that these constitute acts and omissions contrary to the best

interests of the Company and as to which they had a material conflict of interest.

66.     The acts of the Individual Defendants in paying and accepting non-tax-deductible

compensation under the Plan and failing to seek stockholder approval of a compensation plan

that complies with the requisite laws and regulations have been and will be disloyal to the

Company, and not in good faith.

67.     As a result of these actions of the Individual Defendants, the Company has been

and will be damaged.

**COUNT IV**
**Waste of Corporate Assets**
**(Derivative Claim on Behalf of the Company Against the Individual Defendants)**

68.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate

them herein by reference.

69.     The Director Defendants' payment of non-tax-deductible compensation under the

Plan to the Officer Defendants, and the Officer Defendants' acceptance of the same have been or

17

will be irrational and constitute waste, and injure the Company by causing it to lose tax benefits and by subjecting the Company to needless tax liability.

70.     As a result of these actions of the Individual Defendants, the Company has been and will be damaged.

71.     Plaintiff has no adequate remedy at law.  Termination of the Plan, an injunction, an equitable accounting with disgorgement, and reimbursement are required to redress the injury.

**COUNT V**
**Unjust Enrichment**
**(Derivative Claim On Behalf of the Company Against Individual Defendants**

72.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate them herein by reference.

73.     The Individual Defendants have been or will be unjustly enriched as a result of their acceptance of bonuses under the Plan, which was insufficiently disclosed to the stockholders who were solicited to approve it.  The Individual Defendants' acceptance of such improperly paid compensation has or will constitute unjust enrichment.

74.     As a result of the actions of the Individual Defendants, the Company has been and will be damaged.

75.     Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.      For an order declaring the vote for the approval of the Plan void;

B.      For an order terminating the Plan and an injunction against payments under it;

18

C.    For an order requiring equitable accounting, with disgorgement, in favor of the

Company for the losses that it has and will sustain by virtue of the conduct

alleged herein;

D.    For an order awarding damages, together with pre- and post- judgment interest to

the Company;

E.    For an order awarding Plaintiff the costs and disbursements of this action,

including reasonable accounts', experts' and attorneys' fees; and

F.    Granting such additional or different relief, including monetary relief, that the

interests of justice or equity may require.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated: December 7, 2010                    CROSS & SIMON, LLC

                                           Ryan M. Ernst (I.D. No. 4788)
                                           913 North Market Street, 11th Floor
                                           Wilmington, DE 19801
                                           Tel: 302-777-4200
                                           Fax: 302-777-4224
                                           rernst@crosslaw.com
                                           *Attorneys for Plaintiff*

*Of Counsel:*

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Gloria Kui Melwani
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171