# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------x

MILTON PFEIFFER,                                    Civil Action No.

        Plaintiff,

                                        **VERIFIED COMPLAINT**

        v.

KIMBERLY S. BOWERS, W.E. BRADFORD,      JURY TRIAL DEMANDED
RONALD K. CALGAARD, JERRY D. CHOATE,
MICHAEL S. CISKOWSKI, IRL F. ENGELHARDT,
RUBEN M. ESCOBEDO, JOSEPH W. GORDER,
WILLIAM R. KLESSE, BOB MARBUT, RICHARD
J. MARCOGLIESE, DONALD L. NICKLES, ROBERT
A. PROFUSEK, SUSAN KAUFMAN PURCELL,
STEPHEN M. WATERS, and VALERO ENERGY
CORPORATION,

        Defendants.

------------------------------------------------------------------x

      Plaintiff Milton Pfeiffer ("Plaintiff") alleges, upon information and belief based upon,

*inter alia*, the investigation made by and through his attorneys, except as to those allegations that

pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

      1.     Plaintiff brings this action derivatively and on behalf of the stockholders of

Valero Energy Corporation ("Valero" or the "Company") against Valero, the Company's Board

of Directors (the "Board") and its executive officers to challenge the re-approval of Valero's

2005 Omnibus Stock Incentive Plan (the "Plan") and the terms of that Plan. As set forth below,

the Plan is defective and, thus, non-tax-deductible pursuant to the tax code, needlessly depriving

the Company of millions of dollars in tax benefits.

2.     The 2010 Proxy Statement that the defendants distributed to solicit the re-approval of the Plan was materially false and misleading and omitted information specifically required to be disclosed by the Securities Exchange Act of 1934 (the "Act") and United States Securities and Exchange Commission (the "SEC"), Rule 14a-9, Scheulde 14A, and Regulation S-K, promulgated thereunder. The Defendants made materially false and misleading statements in the Proxy Statement by representing to the Company's stockholders that incentives under the Plan will be tax-deductible if the stockholders re-approve it.  This representation is false as the Plan is not tax-deductible because it does not comply with 26 U.S.C. § 162(m) ("IRC § 162(m)") and its relevant regulations.  The Plan is also not tax-deductible because the Proxy Statement omits information specifically required by SEC regulations, which are applicable to stockholder approval of IRC § 162(m) plans.

3.     By distributing a false or misleading Proxy Statement, the defendants caused the stockholders to approve a non-tax-deductible incentive plan.  The false or misleading Proxy Statement also tainted the stockholder vote for the directors up for re-election.

4.     The defendants also breached their fiduciary duties not to commit waste, by not having a compensation plan that complies with the applicable laws and regulations.  There is no reason not to have a tax-deductible Plan that will maximize tax benefits for the Company.  The Board has a duty to construct a Plan that will obtain the maximum possible tax deduction for Valero.

5.     Plaintiff seeks, for relief, corrected disclosures and a new stockholder vote on the re-approval of the Plan.  As a stockholder, Plaintiff has a cause of action to seek relief when a false or misleading proxy statement interferes with fair corporate suffrage.

## JURISDICTION AND PARTIES

6.     The jurisdiction of this Court is founded upon: (a) federal question jurisdiction, pursuant to § 27 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331; (b) diversity of citizenship, 28 U.S.C. § 1332, and (c) supplemental jurisdiction, 28 U.S.C. § 1367(a).  The Plaintiff is a citizen of the State of New York.  The defendants are all citizens of jurisdictions other than New York. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9, 17 C.F.R. § 240.14a-9, of the SEC promulgated thereunder, SEC Schedule 14A, 17 C.F.R. § 240.14a-101, SEC Reg. S-K (Item 402), 17 C.F.R. § 229.402, and the laws of Delaware.  In addition, IRC § 162(m) and the Treasury Regulation, 26 C.F.R. § 1.162-27, are applicable.

8.     Plaintiff brings this action directly and derivatively to recover specific equitable relief for  false and misleading 2010 Proxy Statement, filed by Valero with the SEC on March 19, 2010 (the "Proxy Statement"), that violated the Exchange Act, SEC Regulations, Treasury Regulations governing the contents of proxy statements, as well as for the breaches of fiduciary duty under Delaware law committed by defendants Bowers, Bradford, Calgaard, Choate, Ciskowski, Engelhardt, Escobedo, Gorder, Klesse, Marbut, Marcogliese, Nickles, Profusek, Purcell, Waters (the "Individual Defendants," which includes Named Executive Officers and Director Defendants, as defined below).

9.     The Proxy Statement solicited stockholder re-approval of the 2005 Omnibus Stock Incentive Plan (the "Plan") at the annual meeting of the stockholders of the Company held on April 29, 2010 and misrepresented the tax-deductibility of the Plan.

10.    The Board of Directors proposed and solicited re-approval of the Plan that failed to obtain maximum tax benefits, to the detriment of the Company.

11.    Plaintiff is a stockholder of the Company and was a stockholder at the time of the wrongs alleged herein, and has been such continuously since then.

12.    Valero is a corporation organized under the laws of the State of Delaware. The Company's last fiscal year ended December 31, 2009. On July 30, 2010, it had 566,260,467 shares of stock issued and outstanding. The Company's stock is traded on the New York Stock Exchange under the ticker symbol VLO. Valero is an international manufacturer and marketer of transportation fuels, other petrochemical products, and power. The Company maintains its principle place of business in San Antonio, Texas. Valero owns and operates 15 refineries throughout the United States, Canada and the Caribbean with a combined throughput capacity of approximately 2.8 million barrels per day, 10 ethanol plants with a combined production capacity of 1.1 billion gallons per year, and a 50-megawatt wind farm. The Company also has approximately 5,800 retail and branded wholesale outlets in the above-referenced countries and regions under Valero and other name brands.

13.    Defendant William R. Klesse is the Company's President, Chief Executive Officer ("CEO"). He is also chairman and a member of the Company's Board.

14.    Defendants Ronald K. Calgaard, Jerry D. Choate, Irl F. Engelhardt, Ruben M. Escobedo, William R. Klesse, Bob Marbut, Donald L. Nickles, Robert A. Profusek, Susan Kaufman Purcell, and Stephen M. Waters are, and until January 26, 2010, W.E. Bradford was, along with Defendant Klesse, all the members of the Company's Board (the "Director Defendants").

15.     Defendants William R. Klesse, Michael S. Ciskowski, Richard J. Marcogliese, Kimberly S. Bowers, and Joseph W. Gorder are the Named Executive Officers as defined in 17 C.F.R. § 229.402(a)(3), Covered Employees as defined in IRC § 162(m)(c)(ii)(2), and Officers as defined in 10 Del. C. § 3114(b) ("Named Executive Officers" and together with the Director Defendants, the "Individual Defendants").

16.     All of the Individual Defendants have received, and will continue to receive, payments from the Plan.

17.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.  This action does not allege securities fraud.  It does not seek to recover damages, but rather specific, equitable relief.  This is an action based on the materially false and misleading Proxy Statement and on the Individual Defendants' breaches of fiduciary duty.

## WRONGFUL ACTS AND OMISSIONS UNDER
## § 14(a) OF THE EXCHANGE ACT

18.     In connection with the acts, omissions, conduct, and wrongs alleged herein, defendants used the mails and the means or instrumentalities of interstate commerce in committing the wrongs alleged herein.

19.     The IRC imposes a tax liability on compensation in excess of $1 million.  IRC § 162 allows for an exception to this tax to Covered Employees, sometimes referred to as the Named Executive Officers by the SEC.  Whereas IRC § 162(a)(1) allows the Company as an income tax deduction "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, IRC § 162(m), however, imposes restrictions on that deduction for the compensation of the Company's Covered Employees.  The Covered Employees, as defined in IRC § 162(m)(3) are the CEO and those officers whose total individual compensation is required by law under the Exchange Act to be reported to the

5

Company's public stockholders each year. For compensation in excess of $1 million, in order for that compensation to qualify for the exception to the restrictions under § 162(m), the Plan must comply with the requirements of IRC § 162(m) and 26 C.F.R. § 1.162.-27 ("Treas. Reg. § 1.162-27").

20.     Congress enacted IRC § 162(m) not as a revenue device, but as part of its effort to regulate corporate affairs in favor of stockholders and other investors. In particular, it is designed to be a counterweight to the policies of many states to regulate corporations that operates in favor of officers, directors, and other insiders. Here, Congress employed the tax code as an instrument of corporate governance. As the Joint Committee on Taxation stated: "The $1 million deduction limitation reflects corporate governance issues regarding excessive compensation, rather than issues of tax policy." Joint Committee on Taxation, Report of Investigation of Enron Corporation and Related Entities Regarding Federal Tax and Compensation Issues and Policy Recommendations, 2003 WL 25599037 n.2211 and accompanying text (2003). As a part of the Tax Code, IRC § 162(m) is construed like other Tax Code provisions.

21.     IRC § 162(m) provides that compensation paid to a public company's chief executive officer or to its four most highly compensated other officers will be deductible, but only up to $1 million, unless the compensation is paid solely for attaining one or more objective performance goals. To qualify for the deduction, the performance goals must: (i) be determined by a two-or-more member compensation committee of the board of directors; (ii) along with the applicable corporate officers' compensation package, be disclosed to, and approved by, a shareholder majority vote; and (iii) be confirmed by the compensation committee as being met before any compensation is paid.

22.     Further, performance goals must be objective. Under the tax regulations, performance goals are objective only if a "third party having knowledge of the relevant facts could determine whether the goal is met." Treas. Reg. § 1.162-27(e)(2). As alleged herein, the performance goals were not objective but, rather, "subjective" goals, in violation of applicable tax regulations. Valero's Plan and its interpretation of the Plan do not meet the exacting standards of the IRC and the regulations. Thus, the Company cannot properly deduct the payments paid pursuant to the Plan.

23.     The Individual Defendants who were members of the Company's Board on or around March 19, 2010, authorized the distribution of the Proxy Statement by means of which they solicited the proxies of Valero's stockholders for, *inter alia*, the election of Class I directors to serve until the 2013 annual meeting of stockholders. The Class I directors who were up for re-election are defendants Escobedo, Marbut, and Profusek. The other items sought by solicitation of proxies include the re-approval of the Plan, and the ratification of the appointment by the KPMG LLP as independent auditors to audit the accounts of the Company for the fiscal year ending December 31, 2010. The Plan was first approved by the stockholders at the 2005 Annual Meeting.

24.     All the defendants permitted the use of their names in the Proxy Statement to solicit proxies.

25.     The Plan permits the grant of the following types of stock-based awards: (i) restricted stock and restricted stock units; (ii) stock options (including incentive and non-qualified stock options); (iii) SARs; (iv) performance awards of cash, stock, or property; and (v) other stock-based awards.

7

26. All employees of Valero and its subsidiaries, as well as the Company's non-employee directors, are eligible to participate in the Plan. The Proxy Statement violates Rule 14a-9, promulgated under § 14(a) of the Exchange Act, 17 C.F.R. § 240.14a-101 (Item 10(a)(1)) because it fails to disclose the basis of participation for the non-employee directors. Item 10(a)(1) states that:

> [i]f action is to be taken with respect to any [compensation] plan pursuant to which cash or noncash compensation may be paid or distributed, [registrants must] furnish the following information: (a) Plans subject to security holder action. (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and *state the basis of such participation.* (emphasis added).

The Proxy Statement merely states that "[t]he Plan is intended to promote our long-term growth and profitability by providing us the tools to remain competitive in attracting, rewarding, retaining, and motivating Valero *employees* and aligning further their interests with the interests of our stockholders through the granting of stock-based awards." Proxy Statement at 56. This is insufficient because it does not explain why non-employee directors are eligible to participate in the Plan.

27. The Proxy Statement represents that the affirmative vote of the holders of a majority of the outstanding shares of the Company's common stock is required for approval of the Plan. The Proxy Statement also alerts the stockholders that a copy of the Plan is attached and that the "summary of the Plan [in the Proxy Statement] is qualified in its entirety by reference to Appendix A, which contains the Plan. According to the Proxy Statement and the Plan, the Plan became effective as of May 1, 2005 and terminates on April 30, 2015. Neither the Proxy Statement nor the Plan indicates the effect of the failure of obtaining an affirmative vote of the

8

majority of the shareholders. This disclosure does not adequately inform the Company's stockholders and, thus, violates § 14(a) and Rule 14a-9.

28.     With respect to the solicitation of proxies for the 2010 annual meeting of stockholders, the Proxy Statement contained materially false or misleading statements and omitted material facts, as set forth herein. As a result, the Proxy Statement deprived the stockholders of the ability to assess the information provided therein for the purposes of voting for the Plan and rendered the stockholders unwitting agents of self-inflicted damage.

29.     Because the Proxy Statement proposed the re-approval of the Plan, SEC Schedule 14A, 17 C.F.R. § 240.14a-101 (Item 8(b)) requires the Proxy Statement to disclose the information required by 17 C.F.R. § 229.402(b)(2)(xii), which is the "impact of the accounting and tax treatments of the particular form of compensation" for the Named Executive Officers. The Proxy Statement represents the following:

> We believe that our outstanding stock options and performance share grants qualify as performance-based compensation and are not subject to any deductibility limitations under Section 162(m). Grants of restricted stock or other equity-based awards that are not subject to specific quantitative performance measures will likely not qualify as "performance based" compensation and, in such event, would be subject to Section 162(m) deduction restrictions.

Proxy Statement at 31. This representation is materially false because the compensation payments paid pursuant to the Plan are not tax-deductible, not even likely.

30.     A performance goal needs to be objective, which, pursuant to the Treasury Regulations is "if a third party having knowledge of the relevant facts could determine whether the goal is met." Treas. Reg. § 1.162-27(e)(2)(i). Under Treas. Reg. § 1.162-27(e)(2)(ii), the Plan "must state, in terms of an objective formula or standard, the method for computing the

amount of compensation payable to the employee if the goal is attained." In fact, page 21 of the Proxy Statement states:

> Assessment of individual performance may include objective criteria, but by necessity it is large subjective. Generally, we do not use prescribed targets or other quantitative criteria ... to measure individual performance.

Despite the statement that the Company does "employ quantitative metrics for the [C]ompany's performance under our annual incentive bonus program," the Plan still fails to comply because the performance goals are subjective, as confirmed by the following statement in the Proxy Statement:

> The criteria used to measure an individual's performance may include assessment of objective criteria ... as well as more qualitative factors such as the executive officer's ability to lead, ability to communicate, and successful adherence to Valero's stated core values...There are no specific weights assigned to these various elements of individual performance.

Proxy Statement at 21.

31.     The Proxy Statement was materially false or misleading in that it omitted to disclose, with the requisite meaningful specificity, the material terms and provisions under which the incentive compensation is to be paid, as required by IRC § 162(m)(4)(C)(ii). The House Conference Report, reciting the intent of Congress in passing IRC § 162(m)(4)(C)(ii), states:

> In developing standards as to whether disclosure of the terms of a plan or agreement is adequate, the Secretary [of the Treasury] should take into account the SEC rules regarding disclosure. To the extent consistent with those rules, however, disclosure should be as *specific* as possible.

H.R. Conf. Rep. 103-213 at *588, 1993 WL 302291 (Aug. 4, 1993). The Treasury Regulations expressly refer to the applicability of the SEC regulations. Treas. Reg. § 1.162-27(e)(4)(v).

32.     The terms of the Plan are nowhere near specific. Under the Plan, the performance measures may be based on one or more of the following predetermined business goals as defined in the Plan: (a) increased revenue; (b) net income measures; (c) stock price measures (including growth measures and total stockholder return); (d) market share; (e) earnings per share (actual or targeted growth); (f) earnings before interest, taxes, depreciation, and amortization; (g) economic value added; (h) cash flow measures; (i) return measures (including return on equity, return on assets, return on capital, return on equity); (j) operating measures (including operating income, funds from operations, cash from operations, after-tax operating income, sales volumes, production volumes, and production efficiency); (k) expense measures; (l) margins; (m) total stockholder return; (n) production volumes; (o) refinery runs or refinery utilization; (p) total market value; and (q) corporate values measures (including ethics compliance, environmental, and safety). Under the Plan the Compensation Committee (the "Committee") is responsible for administering the Plan within their sole discretion. Many of these business goals, *i.e.*, "economic value added," "corporate values measures" are not defined in the Proxy Statement, in the Plan, nor in the Company's Form 10-K. These terms are essentially meaningless for a regular shareholder who is trying to determine the possible compensation a participant may receive, even if they were quantifiable by Company.

33.     Pursuant to the Treasury Regulations, the Plan must be administered by a compensation committee that consists of solely of two or more outside directors as defined by Treas. Reg. § 1.162-27(e)(3)(i). During 2009, the members of the Committee were defendants Marbut, Bradford, Choate, and Profusek. None of them are considered an "outside director." A director is not an "outside director" if he or she "receive[s] remuneration from the publicly held corporation, either directly or indirectly, in any capacity other than as a director." Treas. Reg. §

11

1.162-27(e)(3)(i)(D). The members of the Committee were and are all eligible to participate in the Plan, in which compensation is paid to them in addition to director compensation. Therefore, none of the members of the Committee are "outside directors."

34. The Plan is also defective in that it allows payments for termination of employment by the Company other than for cause or disability, or by the Executive for good reason. These payments thus do not meet the exception in Treas. Reg. 1.162-27(e)(2)(v) that allows compensation to be payable upon death, disability or change of ownership or control because this arrangement suggests that the Named Executive Officers "would receive all or part of the compensation *regardless* of whether the performance goal is attained." Thus, because the payment of compensation under a grant or award is only nominally or partially contingent on attaining a performance goal, none of the compensation payment under the grant or award will be considered performance-based.

35. Because of the defects in the Plan and the material misrepresentations and omissions in the Proxy Statement, awards under the Plan will not be tax-deductible even if the stockholders approve the Plan. Moreover, the exceptions to § 162(m) applies only to "Covered Employees" as defined by Treas. Reg. § 1.162-27(c)(ii)(2)(ii), which in turns looks to Item 402 of Regulation S-K, 17 C.F.R. § 229.402. Item 402 defines "Named Executive Officers" as the CEO and the Chief Financial Officer ("CFO"), and the three highest compensated officers (other than the CEO and the CFO). Therefore, compensation paid to Plan participants that do not fall within the category of "Covered Employee" will not be tax-deductible, even if the Plan otherwise complies with the laws and regulations.

36. Given the defects in the Plan, the Proxy Statement is materially false to represent that any part of the Plan complies with IRC § 162(m) and that the compensation paid to the

Covered Employees is tax-deductible. This material misrepresentation violates § 14(a) of the Exchange Act and Rule 14a-9.

37.    To the extent that the Treasury Regulations are supplemented by the SEC Regulations, Treas. Reg. § 1.162-27(e)(4)(v), the SEC requires that a proxy statement must either disclose targets or discuss how difficult it will be for the company to achieve the undisclosed target levels. 17 C.F.R. § 229.402 (Instruction 4). Moreover, a proxy statement must also disclose how non-GAAP target levels are calculated from the audited financial statements. 17 C.F.R. § 229.402 (Instruction 5).

38.    Within the first 90 days of the fiscal year starting January 1, 2010, the Committee must set the targets for annual incentives under the Plan. Treas. Reg. § 1.162-27(e)(2)(i). But the Proxy Statement omitted to disclose those targets and the Proxy Statement was issued after the 90-day period. Nor did the Proxy Statement disclose how difficult it will be for the executive, or how likely it will be for the Company to achieve, those undisclosed targets. Thus, these material omissions from the Proxy Statement are unlawful under 15 U.S.C. § 78n(a).

39.    The Proxy Statement expressly represents that certain awards under the Plan are tax-deductible. However, Plaintiff is unable to confirm this representation as the Proxy Statement fails to state whether the Company actually claimed such deductions on its tax returns.

40.    Furthermore, the question of whether an expense is deductible depends on a correct application of the law, not upon the failure of the IRS to enforce that law. As one court explained:

> That, as is claimed by the defendants, the Internal Revenue Service did not charge [the defendant] with personal tax liability ... is not binding on the court in an action such as this. The standards of fiduciary responsibility are not to be measured by those of tax accounting. The tax collector may have felt that he had inadequate evidence or manpower, or perhaps for other reasons he did not

13

> have the inclination to proceed against the taxpayer. That determination is not equivalent to exoneration of the fiduciary or to satisfaction of his obligations to those, including minority stockholders, for whom he is a trustee.

*Sorin v. Shahmoon Indus., Inc.*, 30 Misc.2d 408, 220 N.Y.S.2d 760, 779 (N.Y. Sup. Ct. 1961).

41.     All the defendants negligently omitted the terms and provisions of the performance goals which were required to be disclosed in order to qualify for the tax deductions under IRC § 162(m).

42.     Defendants' acts and omissions have caused injury to the Company and its stockholders, who were deprived of all material facts necessary to make a fully informed vote on whether to approve the Plan.

## STATE LAW ALLEGATIONS

43.     Under Delaware law, as members of the Board, the Individual Defendants owe a fiduciary duty of loyalty, good faith, and full and fair disclosure to the Company's shareholders. The Director Defendants breached those duties by approving the Plan, paying wasteful non-tax-deductible compensation and making material misstatements and omitting material facts from the Proxy Statement. The Officer Defendants were unjustly enriched by receiving non-tax-deductible payments and breached their duties of loyalty to the Company.

44.     The possible compensation payable pursuant to the Plan not only constitutes waste, but shocks the conscience. Over a billion dollars of performance-based awards could be awarded under the Plan, but because the Plan is invalid and defective, such awards could also subject the Company to hundreds of millions of dollars in tax liability.

45.     The Board's payment of compensation that is not properly tax-deductible constitutes waste. As Learned Hand, Felix Frankfurter, and others have famously stated, there is no patriotic duty to arrange your business so as to increase your taxes, because taxes are enforced

extractions, not voluntary contributions. And the prospect of higher taxes is one way that the Government uses to discourage antisocial conduct. For example, the Emergency Economic Stabilization Act, Pub. Law 110-185, seeks to control corporate executive compensation at companies receiving federal assistance by providing that annual payments in excess of $500,000 are not tax-deductible.

46.     The Board's exercise of authority to pay the compensation at issue, even if tax-deductible, would also constitute waste. The maximum that a participant may receive during any calendar year awards that are to be settled in shares is 1,000,000 shares. The maximum number of awards to be settled in cash in dollars is $20,000,000, per participant. The total maximum compensation, using the stock price given in the Proxy Statement at 40, $16.75 per share, on December 31, 2009, and the value of stock option ($6.91 per share, from Note 22 to the financial statements in the Company's 2009 Form 10-K, filed on February 25, 2010) is $26,910,000. These excessive payments are not justified in light of the fact the Company suffered a loss of net income of nearly $2 billion for the fiscal year ending 2009.

47.     The aforesaid breach of duties of loyalties and good faith and the misrepresentations to and omissions from the Proxy Statement have caused, and are continuing to cause, injury to the Company and its stockholders.

## DEMAND ALLEGATIONS

48.     Substantive requirements of demand are governed by the law of Valero's state of incorporation -- Delaware.

49.     Plaintiff has not made any demand on the Company's board of directors to institute this action because doing so would be a futile and useless act.

50.    The entire Board is interested in the transactions and events alleged herein. Of the nine members of the Board, all of them are eligible to participate in the Plan and are interested in the payments to be made under the Plan. Their interest lies in the fact that each director stands to receive a personal financial benefit that is not equally shared by the stockholders.

51.    Demand is also excused because the acts alleged herein are not acts of sound business judgment. The demand requirement and its exceptions are to encourage intra-corporate resolution of disputes and to obtain the business judgment of the board on whether the litigation is in the best interest of the corporation and its shareholders. However, where, as here, a stockholder sues the board of directors over an act that is not a decision concerning the management of the business and affairs of the corporation, but one of disclosure, the business judgment rule does not apply. Delaware law excuses demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent. The Board's conduct concerning the misrepresentations in, and the omissions from, a proxy statement are not matters of business judgment, and they are not protected by the business judgment rule for the following reasons:

a.    When, for the stockholders' annual meeting, a corporate board solicits stockholders' votes for directors and for the approval of the actions of the board and its committees, the board owes the stockholders a statutory and fiduciary duty of full and fair disclosure, meaning that all material facts must be fully and fairly disclosed and no material facts may be omitted. This duty of disclosure is separate and apart from the duty and authority to deal with the business and property of the corporation. Courts give deference to a corporate board of directors as to questions of management of the corporation's business only, but not as to

16

questions of the board's performance of its disclosure duties, for three reasons: *First*, a board's decision, even in good faith, to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the subject; *Second*, although courts may not be well suited to making business decisions, courts are well-suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures; *Third*, allegations that a proxy statement has materially false or misleading representations and omissions raises issues as to the honesty, loyalty, and good faith of the directors.

      b.     As with Delaware law, under federal policy, there is no need for prior demand on the board of directors with respect to the claim of misrepresentations and omissions in a proxy statement.

      c.     At bar, the Proxy Statement contains materially false or misleading statements and omissions concerning the tax deductibility of payments under the Plan and the standards and variables for determining compensation under the Plan.

    52.    The Director Defendants had the tools at hand, *i.e.*, complying with § 162(m) and the Treasury Regulations promulgated thereunder, to obtain a tax deduction on the qualified compensation. Instead, they produced a defective compensation plan that was supposed to be designed to receive such tax-deductions. Payments of such non-tax-deductible compensation constitute waste. Waste is not protected by the business judgment rule, and as such, demand is excused.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of § 14(a) of the Exchange Act and SEC Regulations
### (Direct Claim Against All Defendants)

53. Plaintiff realleges the preceding paragraphs as set forth above and incorporate them herein by reference.

54. The Defendants caused materially false statements to be disseminated to the stockholders in the Proxy Statement.

55. The acts of the Defendants have injured the Plaintiff directly by providing materially false information that the SEC specifically requires in proxy statements.

56. As a result of these actions of the Defendants, the Plaintiff has, and will continue to be, damaged by the denial of a fully informed vote.

57. Plaintiff has no adequate remedy at law. To ameliorate this injury, injunctive relief is required in the form of corrective disclosures and another vote on the Plan. The Court should require the Defendants to distribute to its stockholders corrected disclosures for 2010 and hold a new vote pursuant to the corrected disclosures.

### COUNT II
### Violations of § 14(a) of the Exchange Act, SEC Regulations and IRC § 162(m) and its
### Accompanying Regulations
### (Derivative Claim on Behalf of the Company Against All Individual Defendants)

58. Plaintiff realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

59. The acts of the Individual Defendants in distributing the false or materially Proxy Statement have injured the Company by interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors and for compensation plans.

18

60.     As a result of these actions by the Individual Defendants, the Company has been, and will continue to be, damaged as a result of the substantial corporate waste resulting from the payment of non-deductible compensation expense.

61.     Plaintiff has no adequate remedy at law.  The Court should require the Defendants to distribute to its stockholders corrected disclosures for 2010 and hold a new vote.

## COUNT III
## Breach of Fiduciary Duty
### (Derivative Claim On Behalf of the Company Against the Individual Defendants)

62.     Plaintiff realleges the preceding paragraphs as set forth above and incorporate them herein by reference.

63.     The conduct of the Director Defendants in seeking stockholder re-approval of the Plan without adhering to SEC regulations and IRC § 162(m) and its accompanying regulations, causing the compensation to be non-tax-deductible, is irrational and constitutes waste, and its has caused and will cause injury to the Company.  An injunction requiring such re-approval upon full and fair disclosure and corrective measures to comply with the applicable laws, and equitable accounting, are required to redress those injuries.

64.     The acts of the Officer Defendants in accepting non-tax-deductible compensation under the Plan, in including their names in the Proxy Statement, seeking stockholder approval of the defective Plan, with false statements and omissions, have been, and will be, a breach of their duty of loyalty to the Company in that these constitute acts and omissions contrary to the best interests of the Company and as to which they had a material conflict of interest.

65.     The acts of the Individual Defendants in paying and accepting non-tax-deductible compensation under the Plan and failing to seek stockholder reapproval of a compensation plan

that complies with the requisite laws and regulations have been and will be disloyal to the Company, and not in good faith.

66. As a result of these actions of the Individual Defendants, the Company has been and will be damaged.

## COUNT IV
## Waste of Corporate Assets
### (Derivative Claim on Behalf of the Company Against the Individual Defendants)

67. Plaintiff realleges the preceding paragraphs as set forth above and incorporate them herein by reference.

68. The Director Defendants' payment of non-tax-deductible compensation under the Plan to the Officer Defendants, and the Officer Defendants' acceptance of the same have been or will be irrational and constitute waste, and injure the Company by causing it to lose tax benefits and by subjecting the Company to needless tax liability.

69. The Director Defendants approved the Plan, which provides for maximum payments to themselves and the Officer Defendants in amounts so excessive, immediately following the fiscal year that reported almost $2 billion of net loss, that no officer of director of ordinary sound business judgment would award, so as to constitute waste.

70. As a result of these actions of the Individual Defendants, the Company has been and will be damaged.

71. Plaintiff has no adequate remedy at law. Termination of the Plan, an injunction, an equitable accounting with disgorgement, and reimbursement are required to redress the injury.

## COUNT V
### Unjust Enrichment
### (Derivative Claim On Behalf of the Company Against Individual Defendants

72.　Plaintiff realleges the preceding paragraphs as set forth above and incorporate them herein by reference.

73.　The Individual Defendants have been or will be unjustly enriched as a result of their acceptance of bonuses under the Plan, which was insufficiently disclosed to the stockholders who were solicited to approve it. The Individual Defendants' acceptance of such improperly paid compensation has or will constitute unjust enrichment.

74.　As a result of the actions of the Individual Defendants, the Company has been and will be damaged.

75.　Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.　For an order declaring the vote for the re-approval of the Plan void;

B.　For an order terminating the Plan and an injunction against payments under it;

C.　For an order requiring equitable accounting, with disgorgement, in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged herein;

D.　For an order awarding damages, together with pre- and post- judgment interest to the Company;

E.　For an order awarding Plaintiff the costs and disbursements of this action, including reasonable accounts', experts' and attorneys' fees; and

F.    Granting such additional or different relief, including monetary relief, that the

interests of justice or equity may require.

**JURY DEMAND**

Plaintiff demands a trial by jury.

CROSS & SIMON, LLC

Ryan M. Ernst (I.D. 4788)
913 North Market Street
11th Floor
Wilmington, DE 19801
Tel: 302-777-4200
Fax: 302-777-4224
rernst@crosslaw.com
*Attorneys for Plaintiff*

*Of Counsel:*

LEVI & KORSINSKY, LLP
Eduard Korsinsky
Shannon L. Hopkins
Gloria Kui Melwani
30 Broad Street, 15th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171