Ryan M. Ernst
rernst@crosslaw.com

CROSS & SIMON, LLC

ATTORNEYS AT LAW
913 NORTH MARKET STREET
11TH FLOOR
WILMINGTON, DELAWARE 19801
302-777-4200 / 302-777-4224 (FAX)
www.crosslaw.com

MAILING ADDRESS:
P.O. BOX 1380
WILMINGTON, DE 19899-1380

April 14, 2011

VIA CM/ECF & FACSIMILE (1.267.299.5069)

The Honorable Paul S. Diamond
United States District Court for the
  District of Delaware, sitting by designation
6631 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1797

Re: *Milton Pfeiffer v. Laurent Alpert*, C.A. No. 1:10-CV-1063PD (D. Del.)

Dear Judge Diamond:

Pursuant to D. Del. LR 7.1.2(b), we are writing on behalf of Plaintiff Milton Pfeiffer, in response to Defendants' supplemental authority letter dated Friday April 8, 2011 (Doc. 26), and Exhibits A and B annexed thereto.

*Seinfeld v. O'Connor*, Civ. No. 09-887-LPS, ___ F. Supp. 2d ___, 2011 WL 1193212 (D. Del. Mar. 30, 2011) (Stark, J.) (Ex. A to Defendants' supplemental authority letter) dismissed a stockholder's direct § 14(a) claim that he was misled about the tax-deductibility of a 162(m) plan for failure to state a claim. The Court stated that the incentive compensation at issue in *Seinfeld* was "much like" the example given in Treas. Reg. § 1.162-27(e)(ix) (Example 3). *Seinfeld*, p. 16, 2011 WL 1193212, at *8.

However, the 2010 Equity Compensation Incentive Plan of defendant Beazer Homes USA (the "Beazer Plan") in the instant case is *not* "much like" the plan in Treasury Regulation § 1.162-27(e)(ix) (Example 3). Treasury Regulation § 1.162-27(e)(ix) (Example 3) provides that named executives may receive a bonus based on any one of *three* factors: "increases in earnings per share, reductions in costs for specified divisions, and increases in sales by specified divisions." *Id.*; *Seinfeld*, p. 16, 2011 WL 1193212, at *8. The Beazer Plan, however, sets forth *thirty-six* (36) possible, non-exclusive, generalized categories of performance conditions which Beazer's Compensation Committee "may" select as bases for incentive awards (plus additional options). *See* Compl. ¶34; Proxy p. 20; Beazer Plan Articles 11.02 & 15.01, pp. B-13, B-17-B18; Pl.'s Opp. To MTD Brief pp. 21-22. The Beazer Plan's open-ended examples include items such as "return on investments," "customers," "cash flow per share," "market share," and many more. Unlike Treasury Regulation § 1.162-27(e)(ix) (Example 3), there is no indication as to whether

the Beazer Plan performance conditions need to be increased, decreased, etc. As *Seinfeld* acknowledged, "Congress did not intend to give a compensation committee unfettered discretion." *Seinfeld*, p. 17, 2011 WL 1193212, at *9.

The 36 categories which the Compensation Committee may use here are so broad as to not constitute any shareholder-approved performance criteria. This is a tremendous concern of Beazer's shareholders, given the fact that Beazer's Board recently gave Beazer's CEO and senior executives millions of dollars of pay increases (ranging from 7.2% up to 150%) even though Beazer shares lost 17.23% of value, and the company posted had net losses of $48.4 million in 1Q2011 and $34 million last year (-.57 per share). Beazer's pay proposals were rejected by 54% of Beazer's shareholders in an advisory vote on February 2, 2011 – one of only a handful of companies to have stockholders vote no in an advisory "say on pay" vote. Thus, shareholders are concerned that Beazer's senior management is being paid handsomely regardless of performance, and regardless of shareholder wishes.

In addition, the language in *Seinfeld* which resulted in the court rejecting a coercion theory was different from the language of the proxy statement here. The proxy statement in *Seinfeld* only stated that if the incentive compensation plan was not approved, the compensation committee "may" award bonuses. *Seinfeld*, p. 7-9, 2011 WL 1193212, at *4-*5. By contrast, here, the Beazer proxy statement stated that if the Beazer Plan was disapproved, Beazer "would have to" restructure its compensation program and "would likely need to include more cash incentives or other non-equity based awards." Beazer Proxy Statement, p. 17. *See also* Pl.'s Opp to MTD Brief, p. 24.[1]

Moreover, Defendants' supplemental authority letter neglects to explain that the derivative claims in *Seinfeld* were dismissed without prejudice for lack of jurisdiction, and neglects to mention *Seinfeld*'s favorable-to-plaintiff dicta regarding the validity of the plaintiff's state law claims for waste and unjust enrichment. *Seinfeld*, p. 20, n.12; 2011 WL 1193212, at *10 n.12 ("Seinfeld arguably raises theories of waste and unjust enrichment in his derivative action.").

In *Resnik v. Woertz*, C.A. No. 10-527-GMS, ___ F. Supp. 2d ___, 2011 WL 1184739 (D. Del. March 28, 2011) (Ex. B to Defendants' supplemental authority letter), the court upheld a stockholder's derivative 14(a) claims and state law claims. With respect to the derivative claims, the Court stated:

---

[1] We note that the very same defense counsel recently argued in another § 162(m) case that "there is no such thing as the law of the district. . . . the doctrine of *stare decisis* does not compel one district judge to follow the decision of another." *Lorber v. Barton*, Case No. 1:10-cv-01101, Dkt. No. 12, Opening Brief in Support of Defendants's Motion to Dismiss, at 11 n.9 (D. Del. Feb 11, 2011) (citing *Theadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991)). Interestingly, defense counsel made this argument to attempt to escape a holding favorable to plaintiff in a another *Seinfeld* case, *Seinfeld v. Barret*, C.A. No. 05-298-JJF, 2006 WL 898989 (D. Del. March 31, 2006).

> According to [plaintiff], the Proxy Statement does not disclose whether improved performance is required to achieve a bonus, how difficult it will be for [the defendant company] to achieve undisclosed target levels or how the target levels will be calculated from the audited financial statements. The court concludes that [plaintiff]'s complaint sufficiently demonstrated the materiality of the misrepresentations and omissions in the Proxy Statement because these considerations could very likely preclude the compensation awards from being tax deductible under § 162(m) of the IRC.

*Resnik*, 2011 WL 1184739, at *11. The present case involves similar material omissions. *Resnik* also upheld the plaintiff's breach of fiduciary duty, waste and unjust enrichment claims. *Id.*, at *12-*13. The Court further held that "[i]t is reasonably conceivable that [plaintiff] can prove a claim for waste. Specifically, [plaintiff]'s complaint alleges that [the defendant company] faces substantial and avoidable tax liability. . . ." *Id.* at *13.

Furthermore, *Resnik* concluded that demand was futile, and that the Board members' independence was compromised because the company's compensation plan provided substantial compensation benefits for every Board member. *Id.* at *14.

If your Honor has any questions or concerns regarding the foregoing, counsel are available at the Court's convenience.

Respectfully submitted,

Ryan Ernst
(Del. Bar I.D. No. 4788)

cc: All counsel of record (via CM/ECF)